UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>　　　　Plaintiff,<br>　　v.<br>LISA RENEE MOODY,<br>　　　　Defendant. | Case No. 16-cr-00418-HSG-1<br><br>**ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. SECTION 2255; DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 64 |

On January 16, 2018, Defendant Lisa Renee Moody ("Defendant"), appearing *pro se*, moved to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). Dkt. No. 64. Specifically, Defendant argues that her attorney was ineffective for (1) failing to file any motions or a direct appeal; and (2) advising her that a 4-level increase of the base offense level under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with another felony offense applied in this case. 2255 Motion at pages 3-5. For the reasons set forth below, the motion is **DENIED**.

**I.　STATEMENT OF FACTS**

Defendant was sentenced on February 27, 2017, and the judgment was filed on March 3, 2017. Defendant was represented throughout this case by Assistant Federal Public Defender Ned Smock. Prior to sentencing, the parties filed sentencing memoranda and the Probation Office submitted a Pre-Sentence Investigation Report ("PSR"). The Court considered each of these documents, and sentenced Defendant to 57 months in prison, the sentence the parties jointly recommended in the plea agreement.

**A.　Defendant's Offense Conduct**

As the PSR describes, this case was the result of an undercover surveillance operation by

the Oakland Police Department ("OPD"). PSR ¶¶ 7-10. On August 10, 2016, OPD officers watched Defendant and her co-defendant, Edwin Roy, conduct several hand-to-hand drug sales near Poplar Park in Oakland, California. PSR ¶ 7. Police arrested Moody and Roy after OPD confirmed that the substance they were selling was cocaine base, at which time the police found a Smith & Wesson Model 5904 9-mm handgun loaded with 16 live rounds, including one in the chamber. PSR ¶¶ 8-9; Dkt. No. 37 ("Plea Agreement"), ¶ 2. This gun was in Defendant's purse. *Id.* Defendant was also in possession of $615 in cash. *Id.* Defendant had a prior felony conviction and therefore was prohibited from possessing a firearm. *Id.* The guns and ammunition were manufactured outside of California and transported into California. PSR ¶ 10.

### B. The Charges Against Defendant

On October 6, 2016, a grand jury returned a two-count Indictment in this case. The Indictment charged Defendant and Roy with conspiracy to possess with intent to distribute, and to distribute, cocaine base, in violation of 21 U.S.C. § 846 (Count One), and possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Two). Dkt. No. 8. The government credibly represents that it excluded a charge under 18 U.S.C. 924(c), which would have carried a mandatory minimum sentence of 60 months, consecutive to any other sentence imposed, as part of a pre-indictment charge bargain with Defendant's counsel. Dkt. No. 68 at 2-3.

### C. The Plea Agreement and Plea Colloquy

Defendant entered into a plea agreement with the government on December 5, 2016. In the plea agreement, she admitted that she knowingly and intentionally conspired with another person to possess with the intent to distribute, and to distribute, cocaine base, also known as "crack cocaine." Plea Agreement, ¶ 2. She admitted traveling to Oakland with her co-conspirator while in possession of crack cocaine. *Id.* She admitted that she intended to sell the drugs when they drove to Poplar Park in Oakland, and she admitted that she sold crack cocaine to multiple customers on August 10, 2016. *Id.* Defendant also admitted knowingly possessing a Smith & Wesson Model 5904 9-mm pistol, which was loaded with sixteen rounds of ammunition. *Id.* She admitted possessing that gun on her person and in her purse on the floor of the car when she was arrested by the Oakland Police Department. *Id.* Finally, she also admitted that when she

possessed this loaded gun, she had been previously convicted of a felony punishable by a term of imprisonment exceeding one year, and that the gun and ammunition were manufactured outside of California and shipped or transported into California. *Id.*

In addition to making these factual admissions, Defendant waived several rights in the plea agreement. First, she gave up her right to appeal her conviction, judgment, and any aspect of her sentence. Plea Agreement, ¶ 4. She retained the right to claim that her counsel was ineffective. *Id.* Defendant also gave up her right to file a collateral attack, including a petition under 28 U.S.C. § 2255, except that he reserved her right to claim that her counsel was ineffective. Plea Agreement, ¶ 5. Defendant also agreed to the sentencing guidelines calculation set forth in the Plea Agreement. Plea Agreement, ¶ 7. She agreed that the offense level should be calculated as written, and that she would not request a departure or variance. *Id.* She also agreed that a sentence at the high-end of the applicable guidelines range was appropriate. *Id.* The parties agreed that a 4-level increase to the base offense level was appropriate under U.S.S.G. § 2K2.1(b)(6)(B) because Defendant possessed the gun listed in the Indictment in connection with another felony, namely, conspiracy to possess with the intent to distribute, and to distribute, cocaine base. *Id.*

In exchange for Defendant's guilty plea, the government agreed not to file any additional charges against Defendant that could be filed based on her conduct in this case. Plea Agreement, ¶ 14. This means that the government agreed not to charge Defendant with a violation of 18 U.S.C. § 924(c), for possessing the firearm charged in this case in furtherance of a drug trafficking crime. That offense, if charged and proven, would have subjected Defendant to a mandatory-minimum 60-month term of imprisonment, to run consecutive to any term imposed on the drug trafficking count. 18 U.S.C. § 924(c)(1)(A)(i).

At the change of plea hearing, Defendant signed the plea agreement in open court. Dkt. No. 70 (transcript of December 5, 2016 hearing) at 7-8. Defendant acknowledged understanding the elements of the two offenses with which she was charged (conspiracy to possess with the intent to distribute and to distribute cocaine, and being a felon in possession of a firearm). *Id.* at 5-6. Defendant also confirmed that she had previously carefully reviewed the paragraph of the plea

3

agreement setting out the factual basis, and that the facts set out in that paragraph were true. *Id.* at 6-7. Defendant confirmed that she was satisfied that she had sufficient time to review the plea agreement with counsel, that she had read the agreement herself, and that she understood the agreement before she signed it. *Id.* at 7. Defendant confirmed that she was fully satisfied with the representation and advice given to her by her attorney. *Id.* at 8. She acknowledged that she was pleading guilty because she was in fact guilty of the charged offenses. *Id.* at 9. She acknowledged understanding the waiver of her right to appeal, and confirmed that she was waiving that right voluntarily and knowingly. *Id.* at 11-12.

After a full colloquy, Defendant pled guilty to both counts in the indictment. *Id.* at 17-18. The Court found Defendant competent and capable of entering an informed plea, and defense counsel confirmed his agreement on these points. *Id.* at 18.

### D. The Sentencing Hearing

The United States Probation Officer calculated the applicable advisory sentencing range under the U.S. Sentencing Guidelines to be 46-57 months. PSR Sentencing Recommendation at page 1. Specifically, the Probation Officer found the total offense level to be 21 and Defendant's criminal history category to be III. PSR ¶¶ 25, 38. This calculation included a 4-level increase to the base offense level for Defendant's possession of the firearm in connection with another felony (drug trafficking). PSR ¶ 17. Defendant agreed with the guidelines calculations in the PSR. Def.'s Sentencing Memorandum, Dkt. No. 46, at 2. The government also agreed with the guidelines calculation in the PSR. Gov.'s Sentencing Memorandum, Dkt. No. 47, at 7.

The Court imposed the 57-month sentence jointly recommended by the parties pursuant to the plea agreement. Dkt. No. 51 (Judgment).

## II. LEGAL STANDARD

To establish an ineffective assistance of counsel claim, Defendant must present evidence that: (1) the defense counsel's representation fell below an objective standard of reasonableness; and (2) defense counsel's deficient representation prejudiced the defendant. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). Defendant must show that her attorney's representation was "objectively unreasonable." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). The Court

4

does not need to "address both components of the inquiry if the Petitioner makes an insufficient showing on one." *Id*. at 697 (recognizing that it will "often" be "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice"). "'Surmounting *Strickland*'s high bar is never an easy task' . . . [and] the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)).

To satisfy *Strickland*'s first prong, Defendant must show that her "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms." *Id*. Thus, a defendant must show that her counsel's acts or omissions were not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). A court's review of counsel's performance "must be highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

To satisfy the second prong of *Strickland*, Defendant must show that she was actually prejudiced by the deficient representation she received. *Id.* at 691–92. That is, the burden is on Defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Where ineffective assistance is claimed in connection with the decision to enter a guilty plea, a defendant must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Elmore v. Sinclair*, 799 F.3d 1238, 1249, 1252 (9th Cir. 2015) (following *Hill* standard).

Under section 2255, the Court must hold an evidentiary hearing "unless the motion and the files and record of the case conclusively show that the prisoner is entitled to no relief." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (citing 28 U.S.C. § 2255). "Where a section

2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.* (citation and internal quotation marks omitted). If a defendant's representations in a 2255 motion contradict her statements in court, a credibility assessment is required. *Id*. "Where the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record, no evidentiary hearing is required." *Id.* at 1159 (citation and internal quotation marks omitted). Rather than conduct an evidentiary hearing, a district court may use discovery or documentary evidence to expand the record. *Id.* And the district court may use its own notes and recollections of the plea hearing and sentencing process to supplement the record, as well as applying common sense. *Id.*

## III. ANALYSIS
### A. Defendant Cannot Demonstrate Ineffective Assistance of Counsel With Respect to the Claim That Her Attorney Never Filed Any Motions or an Appeal.

As Ground One of her 2255 Motion, Defendant claims her attorney was ineffective because he never filed any motions or an appeal on her behalf. 2255 Motion at 3. However, Defendant fails to identify any motion or issue that could have been raised on appeal. Defendant cannot demonstrate that Mr. Smock's representation fell below an objective standard of reasonableness, or that his representation prejudiced Defendant, and her 2255 Motion on this ground is denied.

In support of her claim, Defendant states, "my attorney never filed any motions on my behalf. After sentencing I requested [] him to file [a] direct appeal and he did not file the direct appeal. He did not argue for me and I felt like he was more on the prosecutorial side[], he rushed me to take the plea."[1] *Id.* Defendant further argues that she should have received a downward departure, though she fails to state the claimed basis, and that her offense level should have been

---

[1] As a part of her motion, Defendant makes a number of assertions of various police misconduct. *See, e.g.*, 2255 Motion at 3 (assertion that the "police reports [were] false and there [were] missing statements and evidence"), 5 (claim that "the police was prejudice, bias, harassing me"). Beyond being entirely conclusory, these allegations are irrelevant to the ineffective assistance claim Defendant actually raises, given her admissions and the other evidence establishing her guilt beyond a reasonable doubt.

17. *Id.* There is no support for this claim in the record, and the parties, the Court, and the Probation Officer all agreed that the total offense level was 21. PSR ¶ 25.

First, Defendant waived her right to file an appeal, so her attorney was precluded from filing an appeal on her behalf. Defendant does not set forth any evidence that the decision to waive her appellate rights was a mistake or otherwise a result of ineffective assistance of counsel. Defendant directly acknowledged during the plea colloquy that she understood these waivers, had discussed them with her counsel, and waived her appellate rights voluntarily and knowingly. Dkt. No. 70 at 11-12. Defendant also agreed to recommend the sentence she ultimately received. Because Defendant confirmed that she knowingly and voluntarily waived her right to appeal, she cannot show that her attorney acted unreasonably by not filing an appeal.

Defendant's 2255 Motion also fails on this ground because, even if she had not waived her right to appeal, she fails to identify any meritorious issue that she claims her attorney should have raised on appeal, and the record does not reflect any such issues. By simply making a general claim that her attorney should have filed an appeal, without even identifying any issue for appeal, Defendant falls far short of meeting her burden to show that her attorney's representation fell below an objective standard of reasonableness. As such, she has failed to meet her burden to show how this failure to appeal or file motions fell below an objective standard of reasonableness.

Defendant also suggests that she was "incompetent" to enter a plea because her husband had been murdered, and says she "was not in the right state of mind to be aware of what [her] plea was." 2255 Motion at 3. The Court is sympathetic to Defendant's loss, and does not trivialize her pain after her husband's death. But the Court conducted a lengthy colloquy with Defendant at the change of plea hearing, and based on its observations at that hearing found that Defendant was clearly competent and capable of entering a plea. Defendant's current statements about not understanding the nature of her plea are not credible given her representations on the record at the change of plea hearing and in the plea agreement, and the Court can conclusively decide this issue based on the record. *See Shah*, 878 F.2d at 1159. Because of the strength of the government's evidence, Defendant no doubt faced a number of unpleasant alternatives in deciding how to resolve this case. But the responsibility for her predicament was rooted in her admitted criminal

conduct and her lengthy prior record, and her claim that her attorney was to blame for the outcome of this case plainly fails.

Finally, Defendant states that her attorney told her she would receive a lengthier prison sentence if she were to somehow successfully appeal her conviction. That statement was accurate. The government credibly represents that it refrained from charging Defendant with a violation of 18 U.S.C. § 924(c), which would have resulted in a mandatory minimum sentence of no less than 60 months plus any additional sentence imposed on the other counts, in exchange for Defendant's entry into the Plea Agreement. If the defense had filed an appeal and somehow gotten Defendant's conviction or sentence reversed, the government would be free to seek a superseding indictment to add the 924(c) charge. A conviction on this additional charge would add a mandatory consecutive sentence of five years. Instead, Defendant's counsel obtained a sentence that is approximately half of what the applicable advisory guidelines sentence would have been had he not negotiated the Plea Agreement. Defendant thus received the benefit of her bargain by the government's agreement not to charge her with that crime, and was not prejudiced by the decision not to appeal the sentence agreed to and imposed in this case.

For these reasons, Defendant has failed to meet her burden to demonstrate that her counsel's representation was objectively unreasonable, or that she suffered prejudice due to her attorney's negotiation of a highly-favorable plea deal.

**B. Defendant Cannot Demonstrate Ineffective Assistance of Counsel With Respect To The 4-Level Enhancement For Possession In Connection With Another Felony.**

As Ground Two, Defendant appears to be claiming that either the Court made a mistake by applying a 4-level increase of the base offense level in this case due to her possession of a firearm in connection with drug trafficking, or that her attorney was ineffective because he counseled her to agree to a Plea Agreement that included the increase. 2255 Motion at pages 4-5. This claim also fails.

Defendant claims that she "was not found guilty nor charged with drug trafficking, therefore [she] should not [have] received [a] 4-level increase." *Id.* at page 5. This is both incorrect and irrelevant. Defendant was charged with drug trafficking in Count One of the

Indictment (conspiracy to possess with the intent to distribute, and to distribute, cocaine base). She pled guilty to Counts One and Two pursuant to her Plea Agreement. She acknowledged the charge, and the truth of the underlying facts, at the change of plea hearing. To the extent Defendant is suggesting that conspiracy to distribute and possess with intent to distribute cocaine base is not "drug trafficking," that claim fails as a matter of law. And Defendant's argument is irrelevant in any event, because all that is required to impose the enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is possession of a firearm "in connection with another felony offense," whatever that felony offense is. Here, she admitted (and the evidence conclusively established) that she possessed the gun in connection with a felonious conspiracy to distribute and possess cocaine base. Therefore, the record makes plain that the Court correctly applied the 4-level increase.

Based on the facts in the record, this increase would have been applied whether or not Defendant agreed to it, and without agreeing to it she would have lost the benefit of the Plea Agreement in this case. Defendant's agreement to the correct guidelines calculation was a condition of the Plea Agreement. As such, Defendant has failed to meet her burden to demonstrate that her attorney's advice on this (or any other) issue fell below an objective standard of reasonableness. Moreover, Defendant cannot demonstrate any prejudice, as the very likely alternative to the Plea Agreement was an additional charge under 18 U.S.C. § 924(c), which would have carried a mandatory consecutive 60-month sentence in addition to the sentence she received based on her conviction on Counts One and Two.

## IV. A CERTIFICATE OF APPEALABILITY IS DENIED

The federal rules governing section 2255 motions require a district court that issues an order denying the motion to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2255 Motions, Rule 11(a). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard, *id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

9

*v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Defendant has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## V. CONCLUSION

For the reasons stated above, the motion to vacate is **DENIED**, and a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Dated: 9/14/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge